## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **CARLOS CALDERAS,** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 3:19-CV-02431** |
| | : | |
| **v.** | : | **Judge Jack Zouhary** |
| | : | |
| **AK TUBE, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

---

### JOINT MOTION FOR FINAL APPROVAL OF A CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF A CLASS ACTION

---

For the reasons set forth in the accompanying Memorandum in Support, Plaintiff Carlos Calderas ("Calderas"), on behalf of himself and others similarly situated, and Defendant AK Tube, LLC ("AK Tube") hereby jointly request that the Court:

1) Finally certify a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for sole purposes of settlement;

2) Approve the settlement as fair, reasonable and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

3) Approve the payments to Class Members described in the Assignment Spreadsheet (attached hereto);

4) Approve the incentive payments set forth in the Agreement to Named Plaintiff;

5) Approve the payment of Attorneys' Fees and Costs as set forth in the Agreement;

6) Approve the payment of Analytics Consulting, LLC's costs as claims administrator, as set forth in the Agreement; and

7) Enter final judgment after the Fairness Hearing for this Class and Collective Action.

    A proposed order will also be submitted to chambers in Microsoft Word format.

Respectfully submitted,

/s/*Matthew J.P. Coffman*                /s/*Ryan M. Martin*                   

| | |
|---|---|
| Matthew J.P. Coffman (0085586) | Ryan M. Martin (0082385) |
| **COFFMAN LEGAL, LLC** | Jamie Goetz-Anderson (0083562) |
| 1550 Old Henderson Road | JACKSON LEWIS P.C. |
| Suite W-126 | PNC Center, 26th Floor |
| Columbus, Ohio 43220 | 201 E. Fifth Street |
| Ph: 614-949-1181 | Cincinnati, OH 45202 |
| Fax: 614-386-9964 | Telephone: (513) 898-0050 |
| Email: mcoffman@mcoffmanlegal.com | Facsimile: (513) 898-0051 |
| | Email: ryan.martin@jacksonlewis.com |
| | Email: jamie.goetz-anderson@jacksonlewis.com |

/s/ *Daniel I. Bryant*        

Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite W-126
Columbus, Ohio 43220
Direct: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Counsel for Defendant*
*AK Tube*

*Counsel for Named Plaintiff*
*and Opt-In Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CARLOS CALDERAS,** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 3:19-CV-02431** |
| | : | |
| **v.** | : | **Judge Jack Zouhary** |
| | : | |
| **AK TUBE, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF A CLASS ACTION**

---

## INTRODUCTION

On November 11, 2020, the Parties filed their Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Rule 23 Class Action ("Joint Motion for Preliminary Approval"). ECF No. 41. On November 18, 2020, this Court entered an Order granting preliminary approval of the Rule 23 class, granting preliminary approval of the Settlement Agreement, and authorizing notice to the Potential Class Members. ECF No. 42. The notice process has been completed pursuant to the Court's Order. Declaration of Jeff Mitchell (hereinafter "Mitchell Decl."), attached hereto as Exhibit 1, ¶¶ 5–15.[1] The Fairness Hearing is scheduled for Monday, March 15, 2021 at 3:00 p.m. The Court-approved notice gave the Potential Class Members up to 60 days in which to request exclusion from the class settlement, or to object to the

---

[1] Additionally, the Declaration of Ryan M. Martin (hereinafter "Martin Decl.") is attached hereto as Exhibit 2, and the Declaration of Matthew J.P. Coffman at ¶ 17 (hereinafter "Coffman Decl.") is attached hereto as Exhibit 3.

1

settlement.

The Claims Administrator issued notice to the Potential Class Members in accordance with the terms of the Settlement Agreement and the Court's Order preliminarily approving the settlement. Sixty days elapsed. Three Potential Class Members opted out of the settlement. **Zero objected to the settlement**.

The settlement resolves bona fide disputes involving violations of the Fair Labor Standards Act and Ohio wage and hour law. As explained herein and in the Joint Motion for Preliminary Approval, the settlement is fair, reasonable, and adequate. No objections to the settlement were raised during the notice process. Therefore, the Parties respectfully request that this Court enter an order granting final certification of the class and collective action, and granting final approval of the Class Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

A summary of Plaintiffs' allegations, AK Tube's defenses, the procedural history of this case, the settlement negotiation process, the Settlement Agreement's terms, and the fairness and adequacy of the settlement are set forth in the Joint Motion for Preliminary Approval, which the parties incorporate herein by reference. ECF No. 41. Nevertheless, in order to assist the Court in its consideration of the arguments in this Joint Motion for Final Approval, the Parties have restated these sections of the Joint Motion for Preliminary Approval in Sections I, II, and III below, with certain minor modifications to account for the passage of time and developments since the filing of the Joint Motion for Preliminary Approval.

### I.     Named Plaintiff's Allegations and AK Tube's Response

On October 17, 2019, Named Plaintiff filed this lawsuit against AK Tube alleging that he and other similarly-situated hourly employees regularly worked more than 40 hours per workweek,

but were not paid all overtime wages owed under the Fair Labor Standards Act ("FLSA") and applicable state law.  Named Plaintiff alleges that he and other employees were not paid all overtime compensation owed to them for two main reasons.

First, Named Plaintiff alleges that, despite clocking in prior to the start of his shift and working up through the point he clocked out (with the exception of paid breaks), he was only paid for the scheduled shift rather than the actual amount of time he was working on the clock (including pre-shift and post-shift work time). During workweeks when he worked 40 or more hours, Named Plaintiff alleges that the unpaid time each day resulted in overtime damages. Named Plaintiff alleges that the same is true for similarly situated class members.

Second, Named Plaintiff alleges that during workweeks when he worked over 40 hours and received a shift premium, safety bonus, attendance bonus, or other additional compensation, the additional compensation was not included in the calculation of his regular rate of pay for overtime under the FLSA.  Named Plaintiff alleges that the same is true for similarly situated class members.

AK Tube denies Named Plaintiff's allegations and denies any violation of the FLSA or applicable state law.  AK Tube states that it has complied with the FLSA and applicable state laws at all times in good faith.  AK Tube further states that it paid employees fully and appropriately for all time worked, and that it is not liable for payment of any additional overtime wages.

The Parties disagree about these and other issues.

## II.      Procedural Background

Based on Named Plaintiff's allegations set forth above, on October 17, 2019, Named Plaintiff filed his Collective/Class Action Complaint against AK Tube on behalf of himself and others similarly situated. ECF No. 1. Named Plaintiff brought the following claims:

- Count 1 – Failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 206;

- Count 2 – Failure to pay overtime wages in violation of the Ohio law (Ohio Rev. Code § 4111.03); and

- Count 3 – Violation of the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15.

*Id.* at PAGEID # 14–18.

On January 24, 2020, AK Tube filed its Answer to the Complaint, denying that it failed to compensate its employees for all hours worked, denying all alleged violations of law, and asserting affirmative defenses. ECF No. 12, at PAGEID # 57–78.

Thereafter, the Parties exchanged data regarding potential class members in an effort to further informal settlement discussions. The settlement discussions were not fruitful. As a result, on March 10, 2020, the Parties filed a Joint Stipulation of Conditional Certification pursuant to the FLSA. ECF No. 17, at PAGEID # 96–99. The Court granted the joint stipulation and conditionally certified this matter as a collective action pursuant to the FLSA on March 20, 2020. Order on Conditional Certification, ECF No. 20, at PAGEID # 112. The Court also ordered that potential members of the collective action receive a notice of the lawsuit and opportunity to opt into this matter. These notices were issued on or about April 1, 2020. A total of 71 individuals (including Named Plaintiff) have filed consent forms to opt into this case (the "Opt-In Plaintiffs").

After finalizing the production of payroll and time punch data for all potential class members, including those who filed consent forms, the Parties engaged in a private mediation. Ultimately, the Parties reached an agreement on the terms of a resolution of this matter on August 13, 2020. The Agreement was fully executed as of November 9, 2020.

4

### III.     The Settlement Agreement

The Parties agree and submit that the terms and conditions of the settlement are fair, reasonable, and in the best interest of the Parties, Opt-In Plaintiffs and the Class. The Parties have entered into the Agreement because it reflects a reasonable compromise of their disputed issues and any actual or potential claims. If finally approved, the Agreement will provide Named Plaintiff, Opt-In Plaintiffs and the Class with significant monetary consideration without the risk that they will recover nothing in this action or that any verdict will be overturned on motion or appeal by AK Tube. In particular, and as described more fully below and in the Agreement, the settlement will compensate all Opt-In Plaintiffs and Class Members on a pro rata basis for the time Named Plaintiff alleges they actually performed work but were not provided with overtime compensation. This guaranteed compensation is especially significant considering AK Tube's potential defenses and the potential that the Court could ultimately deny class certification in this matter.  The Parties respectfully submit that the terms of the Settlement provide as much if not more relief than most Opt-In Plaintiffs and Class Members could expect to receive at trial, but without the risk, time, and expense associated with such a trial.

In addition to the monetary relief for Opt-In Plaintiffs and Class Members, the Agreement provides that AK Tube will also pay an incentive payment of $7,500 to the Named Plaintiff and pay $66,501.98 to Plaintiff's Counsel for attorney's fees and costs. In addition, the settlement administrator's fee will be taken from the settlement fund. (Agreement, ECF No. 41-1, §§ 2-4) The Parties selected Analytics Consulting, LLC as the settlement administrator. (Agreement, § 10)

As outlined in the Agreement, the potential Class Members include any individual who within the two-year period prior to the filing of the Complaint (that is, going back to October 17, 2017) was employed by AK Tube in an hourly, non-exempt role in Ohio and worked 40 hours in

any workweek beginning two years preceding the filing date of Named Plaintiff's Complaint, so long as the individual has not opted out of the Rule 23(b)(3) class. Based on AK Tube's payroll records, the Parties believe that there will be approximately 234 potential Class Members. The term "Opt-In Plaintiff" means Named Plaintiff and the individuals who have filed consent forms to join the Lawsuit. Named Plaintiff and Opt-in Plaintiffs may also be a part of the Class; however, no individual will receive an additional payment based on their status as both an Opt-In Plaintiff and Class Member.

The Agreement provided for notice to be issued to the putative members of the settlement class, which the Court has approved. This notice has been issued to putative members of the settlement class in accordance with the Agreement and this Court's prior orders. Mitchell Decl., Ex. 1, ¶¶ 5–15.

Based on the below, and the terms of the Agreement itself, the Settlement is fair, reasonable and adequate, and it should be finally approved by the Court.

## IV.    The Court's Preliminary Approval Order

On November 18, 2020, this Court issued an Order (1) finding that the Settlement Agreement was arrived at via extended good faith, arm's length negotiations by the Parties; (2) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (3) preliminarily approving, for settlement purposes only, the Ohio Class, as outlined in the Settlement Agreement, pursuant to Federal Civil Rules 23(a) and (b)(3); (4) appointing Carlos Calderas as Class Representative, (4) Appointing Coffman Legal, LLC and Bryant Legal, LLC as Class Counsel pursuant to Federal Civil Rule 23(g); (5) appointing Analytics, LLC as the Settlement Administrator; (6) approving, for form and substance, the Class Notices; and (7) adopting the following deadlines for finalizing the settlement:

6

- Information related to class members provided by November 30, 2020;

- Notices distributed by December 21, 2020;

- Objections and opt-out forms due within 60 days of the date on which the Notices were mailed;

- Joint Motion for Final Approval by March 5, 2021; and

- Fairness Hearing on March 15, 2021 at 3:00pm.

Settlement Order, ECF No. 42.

## V.  The Notice Process

### A.  The parties complied with the Notice requirements approved by the Court.

As stated above, this Court issued its Order preliminarily approving the settlement on November 18, 2020. Settlement Order, ECF No. 42. On November 30, 2020, Defense Counsel sent a class list to the Settlement Administrator. Martin Decl., Ex. 2, ¶ 3. This class list included 254 individuals. *Id.*.

On December 21, 2020, the Settlement Administrator issued Notices to all Potential Class Members. *Id.* ¶ 11.

### B.  The Parties receive three opt-outs and no objections.

The Notice provided Potential Class Members with information on their right to object to, or exclude themselves from, the Settlement. Pursuant to this Court's Order, the Notice Packet also informed Potential Class Members that any objections or requests for exclusion were to be communicated to the Settlement Administrator on or before February 19, 2021.

Of the 254 Potential Class Members, ***none objected to the Settlement***. Mitchell Decl., Ex. 1, ¶ 14; Martin Decl., Ex. 2, ¶ 4; Coffman Decl., Ex. 3, ¶ 18. Only three individuals opted out: Kevin Wick, Jr., Heather Wick, and Scott Dazley. Mitchell Decl., Ex. 1, ¶ 13.

7

## ARGUMENT

In November 2020, the Parties moved this Court, which had already conditionally certified a collective action pursuant to the FLSA, for preliminary certification of a class action and preliminary approval of a class and collective action settlement. Based upon the arguments set forth in the Parties' briefing, this Court issued an Order granting the Parties' motion. The Court also preliminarily found that the Settlement Agreement was the result of "extended good faith, arm's length negotiations by the parties" and was "a fair, reasonable, and adequate resolution of disputed claims under the Fair Labor Standards Act ("FLSA") and the Ohio wage and hour laws." Settlement Order, ECF No. 42, at PAGEID # 318. Nothing has changed to alter these findings. As set forth below, the Parties respectfully request that the Court grant final certification to the Class and Collective Action and grant final approval to the settlement.

### I.  The Class Should Be Certified Under Rule 23.

The Parties jointly request that the Court finally certify a class action for settlement purposes with respect to all state law claims asserted in the Complaint. A proposed settlement class must satisfy the requirements of Federal Rule of Civil Procedure 23. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). In deciding whether to certify a class action, district courts are afforded broad discretion. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In making its decision, the district court may not inquire into the merits of the class representatives' underlying claims and instead must accept as true the allegations in the complaint. *Passa v. City of Columbus*, 266 F.R.D. 197, 202 (S.D. Ohio 2010) (citing *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. App'x. 550, 555 (6th Cir. 2003)).

Rule 23 provides several avenues for class certification. In this case, the Parties seek final certification under Rule 23(a) and 23(b)(3). Rule 23(a) imposes four requirements that a representative plaintiff must meet in order to be able to bring a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The first three Rule 23(a) requirements at commonly referred to as numerosity, commonality, and typicality. Rule 23(b)(3) allows for class certification if the requirements of Rule 23(a) are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiency adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Parties submit that the requirements for final certification under Rule 23(a) and 23(b)(3) are readily met in this action.

**A.      The Requirements of Rule 23(a) Are Met.**

**1.      The class is so numerous that joinder of all members is impracticable.**

There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d at 1079. Nonetheless, "Courts routinely hold that a class of 40 or more members is sufficient to meet the numerosity requirement." *Raymond v. Avectus Healthcare Sols.*, 2020 WL 3470461 (S.D. Ohio Mar. 27, 2020) (internal quotations omitted). Indeed, whenever "substantial numbers" of people are affected, this requirement is satisfied. *In re Whirlpool Corp. Front-*

9

*Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (hereinafter "*In re Whirlpool*").

Here, the final Class will consist of 231 individuals (taking into consideration the three individuals who submitted opt-out forms). Clearly, joinder of well over 200 individuals would be difficult and inconvenient, if not impossible. Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### 2. There are questions of law or fact that are common to the Class.

"Commonality exists when class members' claims depend upon a common contention that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Raymond*, 2020 WL 3470461, at *4 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[T]he commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996) (internal quotation marks omitted); *see also In re Whirlpool*, 722 F.3d at 853 (explaining that the commonality standard turns on whether there are unifying allegations regarding a defendant's common conduct toward the class).

Here, the commonality requirement is satisfied because, among other things, all Class Members were subject to the same alleged policy of AK Tube paying individuals according to their scheduled shifts (unless an individual reported working outside of the scheduled shift). The Parties simply dispute whether any work outside of those scheduled shifts, which was unpaid, occurred. The Parties were also subject to the same policies related to the calculation of their regular rates of pay for overtime purposes. These single policies unite the members of the

10

proposed Class. As such, whether each Class Members' overtime claims will prevail generally turns on the common question of whether their regular rates were correctly calculated or whether they performed work for which they were not compensated.

Thus, there are common questions of law and fact satisfying the Rule 23(a)'s commonality requirement with regard to the Class.

### 3. Named Plaintiffs' claims are typical of the claims of the Class.

Under Rule 23(a)(3), "the claims . . . of the representative parties [must] be typical of the claims . . . of the class." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id*. (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *Raymond*, 2020 WL 3470461, at *4 (internal quotation marks and further citation omitted). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because the Named Plaintiff and every Class Member share the same interest of recovering damages based on the same legal theories: that AK Tube's failure to correctly calculate their regular rates of pay and/or failure to pay Class Members for time spent working was allegedly unlawful. The same policies and procedures that applied to Named Plaintiff also applied to the Class as a whole. In addition, AK Tube's potential defenses to the allegations made by Named Plaintiff will rise and fall with respect to the Class as a whole and not individually. As a result, the typicality requirement is also met.

11

4.      **Named Plaintiff will fairly and adequately protect the interests of the Class.**

Rule 23(a)(4) requires the court to determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests 'the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent.'" *Id.* at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. First, Named Plaintiff has no interests which are antagonistic to the interests of any member of the class. As set forth above, Named Plaintiff is a member of the Class and shares claims that are both common and typical of other members of the Class. Named Plaintiff has also been instrumental in prosecuting this matter. His knowledge of the facts of this case and regular communications with Class Counsel facilitated the filing of a detailed Complaint and the use of targeted discovery that allowed the Parties to quickly identify key facts and documents that precipitated the resolution of this case.

Second, Class Counsel are experienced in handling complex litigation, including representing plaintiffs in class actions, collective actions, and wage and hour disputes. As this Court opined on February 14, 2020, it "is familiar with Plaintiff's Counsel's work in this and other wage and hour cases and finds that they have the requisite experience in complex wage and hour

12

matters." *McCullen v. Toledo Country Club*, No. 3:18-cv-276, Dkt. Entry No. 36, at PAGEID # 300 (N.D. Ohio Feb. 14, 2020) (Knepp, M.J.). After prosecuting an FLSA matter involving off-the-clock work that resulted in a successful jury verdict on January 8, 2020, Judge Morrison opined that both Attorneys Coffman and Bryant have a "solid amount of knowledge in the FLSA arena." *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 WL 1080418, at *6 (S.D. Ohio Mar. 6, 2020) (Morrison, J.). Finally, as recently as September 25, 2020, Judge Rice opined in an Order granting the parties' joint motion for final approval of class and collective action settlement and certification of settlement class—which involved 1,050 putative class members—that Attorneys Coffman and Bryant are "highly qualified and have substantial experience in federal litigation and class action litigation," have "substantial experience in wage-and-hour litigation," and the Court "is familiar with the legal counsel provided by attorneys Matthew Coffman and Daniel Bryant, particularly in wage and hour matters." *Satterly v. Airstream, Inc.*, No. 3:19-cv-107, 2020 WL 6536342, at *11 (S.D. Ohio Sept. 25, 2020) (Rice, J.). Named Plaintiff and Class Counsel have demonstrated commitment, perseverance, and competence in representing the interests of the entire class. As such, Named Plaintiff has proven himself more than adequate to serve as a representative of the Settlement Class.

     **B.**     **The Requirements of Rule 23(b)(3) Are Satisfied.**

     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, class certification is proper when the Court finds that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As demonstrated below, class certification under this subsection of Rule 23 is proper.

**1.    Questions of law or fact common to the members of the class predominate over any questions affecting individual class members.**

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate" and a showing that "common questions [] can be proved through evidence common to the class." *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1191, 119–96 (2013) (emphasis in original); *see also In re Whirlpool*, 722 F.3d at 858 (quoting *Amgen* and stating same). "A plaintiff [] need not prove that each element of a claim can be established by classwide proof," only that common questions "*predominate* over any questions affecting only individual [class] members." *Id.* (some alteration in original) (internal quotation marks omitted) (quoting *Amgen*, 133 S. Ct. at 1196)).

In this case, the proposed class satisfies the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core, predominant alleged facts and legal issues, in that all Class Members were subject to the same wage and hour practices.  As outlined above, AK Tube's defenses to Named Plaintiff's allegations also apply on a class-wide basis. There are key questions that will determine whether the Class Members should be provided with additional overtime compensation, such as whether AK Tube's pay practices failed to compensate them for all of their overtime hours worked, whether any additional compensation earned should have been included in their regular rates, and whether AK Tube's defenses apply to potential Class Members. The same evidence, such as AK Tube's payroll records and time punch data, is central to the Class Members' individual claims, so there are common questions which predominate. *See Raymond*, 2020 WL 3470461, at *8 ("[I]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.") (quoting *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017)).

14

> **2.     A Class Action is superior to other methods for the fair and efficient adjudication of the controversy.**

Here, "class certification is the superior method to adjudicate this case fairly and efficiently." *In re Whirlpool*, 722 F.3d at 861 (citing *Amgen*, 133 S. Ct. at 1191); *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (stating that class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (noting that of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims"). The matters pertinent to this analysis include the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation already begun, the desirability of concentrating the litigation in a particular forum and any likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

The undersigned counsel are unaware of any unnamed class member's desire to individually prosecute a separate action, let alone any litigation brought by such an unnamed class member in other venues.  Indeed, as set forth above, no Class Member objected to the settlement and only three individuals opted out of the settlement. This is not surprising. While many members of the Class may be entitled to several thousand dollars, to dedicate the time and resources necessary to prevail in this matter would greatly exceed the monetary value of an individual claim. If, however, any of the three individuals who opted out of the settlement wish to pursue individuals claims, they are free to do so.

Furthermore, the benefits of concentrating the claims in this Court through the class action mechanism are evident. AK Tube consents to the Court's jurisdiction, AK Tube operates in this

15

district, and Named Plaintiff and many of AK Tube's witnesses are located in this district.

Finally, because a settlement obviates the need for a trial, in deciding "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, class certification is superior to any other method in the present case.

## II.    The FLSA collective action certification should be maintained.

The FLSA provides that a person may maintain an action to recover wages "on behalf of himself…and other employees similarly situated." 29 U.S.C. § 216(b). To do so, a claimant must ultimately show that he is "in fact, similarly situated" to the employees to whom he seeks to send notification of the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks omitted). "[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (partially overruled on other grounds in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2015)). The representative plaintiff must show "only that 'his position is similar, not identical, to the positions held by the putative class members," and this determination "need only be based on a modest factual showing." *Comer*, 454 F.3d at 548 (internal quotation marks omitted). The determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* at 547 (internal quotation marks omitted).

The Parties have met this standard, and the Court has already granted conditional certification pursuant to the FLSA.  Moreover, as set forth above, all Class Members including Named Plaintiff, were subject to the same pay practices. Accordingly, the Court should maintain collective action certification with respect to the Settlement Class pursuant to Section 216(b) and

16

finalize the resolution of this matter as a collective action.

**III.    The Settlement should be approved because it is fair, reasonable, and adequate.**

All of Named Plaintiff's class claims under state law are brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Sixth Circuit has held that "[b]efore approving a [Rule 23] settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Named Plaintiff's claim for unpaid overtime wages under federal law is brought as a collective action under the FLSA.  The FLSA requires that either the Secretary of Labor or a judge approve an FLSA collective action settlement in order for the settlement to be binding. *See* 29 U.S.C. § 216(b), (c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). When Parties bring a proposed settlement of an FLSA claim before a court, that court must scrutinize the settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id. at* 1354–55; *see Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (quoting *Lynn's Food Stores, Inc.* and stating same). If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

**A.    The Settlement satisfies the Sixth Circuit's seven-factor test.**

17

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007).  Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145–1146 (M.D. Fla. 2005), *citing*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Sweet v. Gen. Tire & Rubber Co.*, No. C75-181A, 1982 WL 278, at *5 (N.D. Ohio Mar. 17, 1982) (Manos, J.).

The Sixth Circuit has identified the following factors to consider in determining whether a settlement is fair, reasonable, and adequate under *both* the FLSA and under Rule 23:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinion of class counsel and class representatives; (6) the reaction of absent class members; and (7) public interest.

*Gen. Motors Corp.*, 497 F.3d at 631 (applying seven-factor test in Rule 23 context); *Combs v. Tru Green Lt'd. P'ship*, No. 1:08-cv-489, 2010 WL 11636094, at *5 (S.D. Ohio, Sept. 2, 2010) (Dlott, J.) (applying seven-factor test in FLSA collective action context); *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (Black, J.) (same). The Court may choose to consider only those factors it considers relevant to the settlement at hand, and often, "inquiry into one factor necessarily overlaps with inquiry into another." *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002). The Court is not required to determine if the settlement is the fairest possible resolution of the claims of each plaintiff, but rather whether the settlement taken as a whole is fair, adequate, and reasonable. *Shy v. Navistar Int'l Corp.*, No. C-3-92-333,

18

1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993).

The Settlement satisfies the seven-factor test, as explained in more detail below.

**1.    There is no evidence of fraud or collusion.**

The Parties' counsel each have extensive experience with complex litigation including litigating Class Action, FLSA, and other wage and hour claims. Martin Decl., Ex. 2, ¶ 5-6; Coffman Decl., Ex. 3, ¶¶ 6, 9. Agreement was achieved only after months of analysis and considerable arms-length good-faith negotiations between the Parties that culminated in a private mediation and subsequent additional settlement discussions. Martin Decl., Ex. 2, ¶ 7; Coffman Decl., Ex. 3, ¶¶ 14-15, 25.

Furthermore, the Parties have a bona fide dispute not only with regard to Plaintiffs' claims as a whole, but with regard to numerous specific issues in the litigation, as outlined in the Parties' Joint Motion for Preliminary Approval.

In light of these bona fide disputes, among others, the experience of the Parties' counsel, and the months of analysis and arm's length settlement negotiations, there is no indicia of fraud or collusion.

**2.    The complexity, expense, and likely duration of continued litigation favor approval.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. As recently observed, "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Satterly*, 2020 WL 6536342, at *5. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming, especially with the delays caused by the current COVID-19 pandemic. Moreover, the Parties continue to disagree over the merits of the claims alleged in this

19

case, as outlined above.  In addition, the Parties disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies. Martin Decl., Ex. 2, ¶ 8; Coffman Decl., Ex. 3, ¶ 27.

If forced to litigate this case further, the Parties would certainly engage in additional complex, costly, and protracted discovery—including production and review of electronic and paper documents and numerous depositions—and motion practice. The Settlement, on the other hand, provides substantial relief to the Class promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. Martin Decl., Ex. 2, ¶ 9; Coffman Decl., Ex. 3, ¶ 31.

### 3.    Discovery was sufficient to allow the Parties to act intelligently.

To confirm that the Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.); *Satterly*, 2020 WL 6536342, at *5. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly,* 2020 WL 6536342, at *5 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*; *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (Black,

J.) (stating that while the parties had not reached conducting depositions, "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

Prior to filing this lawsuit, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and AK Tube. Likewise, AK Tube's counsel has performed a significant amount of research and factual investigation in response to the Complaint and during the discovery process. Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

The Parties also engaged in substantial investigation and discovery prior to negotiating the Settlement. AK Tube produced voluminous payroll and time punch records for all potential members of the Class, which have been analyzed by experts for both sides. Both Parties used that data to construct a damages model. Using that model, the Parties engaged in substantial negotiations and came to an agreement. Therefore, discovery left the Parties sufficiently informed to be able to negotiate a fair, reasonable, and adequate settlement. Martin Decl., Ex. 2, ¶ 10; Coffman Decl., Ex. 3, ¶ 14.

### 4. The risks of litigation and the uncertainty of recovery favor approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, AK Tube raises affirmative defenses to Named Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

Class Members' range of possible recovery is also open to dispute. Even if Named Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon

which the Parties continue to disagree. As an example, the Parties significantly disagree as to how to offset double time wages received by Class Members, how to offset Class Members' paid lunch breaks, whether the continuous workday rule may be triggered, whether a willful violation of the FLSA took place, and other matters relevant to calculating damages. Martin Decl., Ex. 2, ¶ 8; Coffman Decl., Ex. 3, ¶ 27. Here, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for more years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (Gaughan, J.) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA)); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the parties would have engaged in significant additional discovery, including, but not limited to responses to discovery requests, many depositions, discovery-related motion practice, and other dispositive motion practice. Further, even if Plaintiff prevails on the merits, any recovery could be significantly curtailed if a jury concludes that AK Tube acted in good faith and Plaintiff fails to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, AK Tube could face the prospect of class-wide liability to hundreds of current and/or former employees, liquidated damages, and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are

22

guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 WL 1614822, at *3; *see also Hall v. U.S. Cargo and Courier Serv., LLC*, No. 2:16-cv-330, 2019 WL 6001198, at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J.) (denying defendant's request for costs following a jury trial in a FLSA collective action).

### 5. Experienced counsels' views favor approval.

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 WL 6536342, at *7; *see, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties, through their attorneys, voluntarily agreed to the terms of the settlement during arm's length, good-faith negotiations facilitated by an experienced private mediator, Frank Ray. All Parties were counseled and represented by their respective attorneys throughout the litigation and the mediation process. The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. It is the opinion of counsel for both Parties that the settlement reached is a fair compromise of genuinely disputed claims, and it is respectfully submitted that resolution of this matter as proposed serves the best interests of both the Parties. Martin Decl., Ex. 2, ¶ 11; Coffman Decl., Ex. 3, ¶¶ 19, 27.

23

6.     **The reaction of absent class members favors final approval of the settlement.**

The reaction of absent class members favors settlement entirely. Notice was issued to 234 Class Members, and none of the Potential Class Members objected to the Settlement. In the absence of any objections, there is no reason to believe that absent class members oppose the Settlement. Indeed, the lack of objections indicates approval of the settlement from absent class members. Martin Decl., Ex. 2, ¶ 4; Coffman Decl., Ex. 3, ¶18. The settlement, therefore, should be approved.

7.     **The public interest favors settlement.**

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 WL 6536342, at *7; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016) (Vecchiarelli, M.J.); *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Indeed, the "touchstone for final approval is the effect on the class *as a whole* in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (alteration in original) (further citation omitted). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

24

For all of these reasons, the Settlement is fair, reasonable, and adequate under the Sixth Circuit's seven-factor test, and therefore the Settlement should receive final approval from the Court.

**B.**     **The settlement payments are fair, reasonable, and adequate.**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 WL 4724499, at *9 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). In the present case, the settlement establishes a pool of settlement funds that will be divided among the settlement class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages. This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds. In addition, to account for the fact that some settlement class members worked for AK Tube for only a short time and may not have accrued alleged overtime damages, each Opt-In Plaintiff and/or Class Member will receive a lump sum payment of $10 from the Total Settlement Fund in addition to their share, if any, of the pro rata distribution, to ensure that each Opt-In Plaintiff and/or Class Member may participate in the Settlement. Coffman Decl., Ex. 3, ¶ 23.

**1.**     **The individual payments are reasonable and adequate.**

As outlined in the Settlement Agreement, AK Tube will provide a Total Settlement Fund of $175,000.00 to cover the full and final resolution of all claims in the Lawsuit.  The Total Settlement Fund includes all payments to Named Plaintiff, Opt-In Plaintiffs, Class Members, the incentive award to Named Plaintiff, and Attorneys' Fees and Costs for Class Counsel, including settlement administration costs.

25

Amounts remaining from the Total Settlement Fund—after Attorneys' Fees, the incentive award to Named Plaintiff, the $10 payment to all Opt-In Plaintiffs and/or Class Members (as outlined below), and expenses (including class administration fees and expenses) have been deducted—will be distributed to Named Plaintiff, Opt-In Plaintiffs, and Class Members pro rata based on the number of alleged overtime hours worked by each individual from October 17, 2017 to October 17, 2019, as determined by an analysis of AK Tube's payroll records (i.e., the hours the Class Member was clocked in for versus the hours the Class Member was paid). This calculation has been made by a data analyst retained by Class Counsel and reviewed by Defense Counsel, and settlement awards range from $10.00 to $2,881.14. To account for the fact that some settlement class members worked for AK Tube for only a short time and may not have accrued alleged overtime damages, each Opt-In Plaintiff and/or Class Member will receive a lump sum payment of $10 from the Total Settlement Fund in addition to their share, if any, of the pro rata distribution, to ensure that each Opt-In Plaintiff and/or Class Member may participate in the Settlement. Coffman Decl., Ex. 3, ¶ 23.

This is a reasonable and adequate settlement payment allocated to the Class members' unpaid overtime claims based on available data and the fact that AK Tube's liability for *any* unpaid overtime is vigorously contested in this litigation.  Although AK Tube admits that Class Members may have clocked in before their shifts, this practice was permitted as a window of convenience for Class Members, and AK Tube's position is that no actual work was performed by Class Members, for which Class Members were not paid, before or after their scheduled shifts. Moreover, AK Tube provided Class Members with additional benefits like double-time pay and a paid lunch period that, in its view, would dramatically reduce or eliminate any potential liability for unpaid overtime compensation.

26

For these reasons, it is respectfully submitted that the settlement payments constitute a fair and reasonable resolution of the claims of the Named Plaintiff, Opt-In Plaintiffs and the other Class Members.

### 2.      Named Plaintiff's incentive award is proper and reasonable.

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (Knepp, M.J.). As one Court observed, incentive awards to a representative plaintiff recognizes the value of his or her services on behalf of other participants are proper. *See In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) ("Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.") (hereinafter "*In re Dunn & Broadstreet*").

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet*, 130 F.R.D. at 374; *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question

and "whether these actions resulted in a substantial benefit to Class Members").

Named Plaintiff contributed significant time, effort, and detailed factual information to Class Counsel that was invaluable to filing their detailed Complaint. Furthermore, he attended a hearing with the Court and agreed to put his name on the line as a Named Plaintiff. Conversations with Named Plaintiff also aided in the efficient prosecution of this litigation. Named Plaintiff's efforts also played a significant role in enabling the Parties to successfully resolve this matter. Named Plaintiff's time and efforts support the requested service payment of $7,500. Finally, Named Plaintiff agreed to a release of all claims he had against Defendant as of the signing of the agreement, which includes any potential claims he may have brought under the FMLA – an initial point of dispute between the Parties. Martin Decl., Ex. 2, ¶ 12; Coffman Decl., Ex. 3, ¶ 21.

Further, Named Plaintiff's proposed service payment set forth in the Settlement Agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Al-Sabur v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. Entry No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (approving a $10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376, at *8 (approving a $10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (approving a $10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (Zouhary, J.) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No.

2:11-CV-1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013) (Marbley, J.) (awarding $12,500 service award); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. Entry No. 420 (M.D. Tenn. Oct. 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 WL 2839797, at *2 (E.D.N.Y. May 12, 2016) (awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, 2013 U.S. Dist. LEXIS 152087, at *1 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *6 (S.D.N.Y. Mar. 24, 2016) (internal quotation marks omitted) (explaining that service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases).

3. **The Attorney's Fees as Percentage of the Common Fund as well as Reimbursement of Costs to Plaintiff's Counsel Are Proper and Reasonable.**

A. **The Mandatory Provisions of Attorney Fees and Costs under the FLSA and the Ohio Wage Act.**

The mandatory prevailing plaintiff's attorney's fees provision of the FLSA and the Ohio Wage Act exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. As more fully outlined below, Plaintiff seeks approval of the amount agreed upon by the Parties in the Agreement (one-third of the common settlement fund) for payment in full of Class Counsel's attorney's fees as well as reimbursement of advanced costs and expenses incurred in the prosecution of this matter. In particular, Plaintiff requests a fee award in the amount of $58,333.33 and reimbursement of reasonable expenses incurred in the amount of $8,168.65 for

29

payment of Class Counsel's costs advanced in this case. Coffman Decl., Ex. 3, ¶ 34. Defendant does not oppose this request.

The FLSA[2] has a fee-shifting provision which provides that reasonable attorney fees and costs should be awarded to a prevailing party. 29 U.S.C. § 216(b). The federal courts have long recognized the profound importance of plaintiffs' right to recover attorney's fees under the FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, the Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). 732 F.2d 495, 501 (6th Cir. 1984) (hereinafter "*United Slate*"). The Court explained that "the purpose of §216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs." *Id.* (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S. Code Cong. & Admin. News 1976, at 5912).

The FLSA does not establish what constitutes a reasonable fee; consequently, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying

---

[2] The Ohio Wage Act also provides for the recovery of attorney fees and costs, but the analysis will be limited to the right to attorney fees and costs under the FLSA. The Ohio Wage Act, R.C. § 4111.10(A) states that "Any employer who pays any employee less than wages to which the employee is entitled under section 4111.03" (the overtime provision that states an employer "shall pay an employee for overtime at a rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek") allows for the recovery of "costs and reasonable attorney's fees as may be allowed by the court."

the substantive portions of the statute providing for the award of fees." *United Slate*, 732 F.2d at 501. That determination is informed by both the purpose and practical operation of the FLSA. "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502).

The nature of FLSA overtime awards usually focuses the Court on the vindication of statutory rights rather than the amount recovered. "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" *Fegley*, 19 F.3d at 1135 (quoting *United Slate*, 732 F.2d at 503); *accord City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting "the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers").

### B.  The Common Fund Approach is Appropriate

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (O'Malley, J.) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (adopting the percentage approach as "the most appropriate method for determining reasonable

31

attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *8–9 (N.D. Ohio June 15, 2010) (Lioi, J.) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (Marbley, J.) (providing an excellent discussion on the subject). In these scenarios, there are many good reasons to prefer using the percentage of the fund method because it encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. *Id.* at 761–62. In contrast, the lodestar method burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id.*

While district courts may use either percentage of the fund or lodestar method to calculate fee awards, courts generally use the percentage of the fund method and concluding that a cross-check is unnecessary. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8–10 (S.D. Ohio Apr. 30, 2018) (Black, J.). Indeed, "[p]erforming a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) (Marbley, J.); *Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *6 (further citation omitted) (stating that a lodestar cross-check of percentage of the fund fee award is "unnecessary").

32

### C. Courts in the Sixth Circuit Regularly Approve that 1/3 of the Common Fund is a Reasonable Attorney Fee Award.

That said, one-third of the settlement fund is a "normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, at *5 (approving as reasonable 1/3 for attorney's fees from a common fund of $1,140,000); *Arledge*, 2018 WL 5023950, at *4 (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); *Osman*, 2018 WL 2095172, at *3 (further citation omitted) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common fund for the same counsel. *See Al-Sabur*, Dkt. Entry No. 23 (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *Walton v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, Dkt. Entry No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees); *see also Swigart*, 2014 WL 3447947, at *7 ("An award of 33% of the total settlement fund"—before additional payment for expenses—"is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See, e.g.*, *Johsnon* [*v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061,] 2013 WL 2295880, at *6; *Kritzer*, 2012 WL 1945144, at *9–10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime.")); *Bessey v. Packerland Plainwell, Inc*., No. 4:06-cv-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) (approving a one-third attorneys' fee award in an FLSA settlement); *Rotuna*, 2010 WL 2490989, at *7 (approving one-third of the common fund as attorneys' fees); *accord Dillworth v. Case Farms Processing, Inc*., 5:08CV1694, 2009 WL 2766991 (N.D. Ohio Aug. 27, 2009) (Lioi, J.);*Hebert v. Chesapeake

33

*Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District.").

As a result, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681, at *8 (quoting *Gascho v. Glob Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016)). In this case, under *Gascho*, the correct measure is:  $58,333.33 / $175,000 = 33.3%$. As noted above, 33.3% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. Moreover, no Potential Class Member has objected to the proposed attorney's fees award.

As noted above, Named Plaintiff has asserted multiple claims that provide for the payment of attorney fees and costs, including for example claims asserted under the Fair Labor Standards Act (29 U.S.C. § 216(b)) and the Ohio wage and hour statutes.  As set forth in the Agreement and subject to this Court's final approval, AK Tube has agreed to an award of Class Counsel attorneys' fees in the amount of one-third of the Total Settlement Fund, to be taken directly from the Total Settlement Fund. (Agreement, ECF No. 41-1 § 4) AK Tube has also agreed to provide Class Counsel with their costs and expenses out of the Total Settlement Fund. Lastly, AK Tube will pay the Claims Administrator its administration fees from the Total Settlement Fund.

The Parties agree that the above provision of attorneys' fees and costs is proper and reasonable in light of the efficient and successful results obtained in this case, the level of experience of Class Counsel in complex litigation such as this, and the time and expense that Class Counsel have expended and will continue to expend to fully resolve this matter. The Parties respectfully request that the Court give final approval to the Attorneys' Fees and Costs provision

34

of the Agreement, subject to this Court's order on a future motion by Class Counsel for fees and costs in compliance with Federal Rules of Civil Procedure 23(h) and 54(d)(2).

For all of these reasons, the Settlement is fair, reasonable, and adequate, and the specific payments contemplated by the Agreement are equitable. The Settlement should be approved under both Rule 23 and the FLSA.

## CONCLUSION

For all of the reasons stated above, Named Plaintiff and AK Tube request that the Court issue an order:

1) Giving final approval of the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2) certifying a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for the sole purpose of settlement, as described in the Agreement;

3) maintaining conditional certification of the collective action pursuant to 29 U.S.C. § 216(b) for the purpose of settlement and approving the collective action settlement;

4) giving final approval to the Agreement and its terms;

5) approving the payments to Class Members described herein;

6) approving the incentive payment set forth in the Agreement to Named Plaintiff;

7) approving the payment of Attorneys' Fees and Costs as set forth in the Agreement;

8) approving the payment of the Class Administrator's costs per the terms of the Agreement; and

9) entering final judgment after the Fairness Hearing for this Class and Collective Action.

Respectfully submitted,

/s/*Matthew J.P. Coffman*          /s/*Ryan M. Martin*

Matthew J.P. Coffman (0085586)    Ryan M. Martin (0082385)

**COFFMAN LEGAL, LLC**       Jamie Goetz-Anderson (0083562)

1550 Old Henderson Road       JACKSON LEWIS P.C.

Suite W-126           PNC Center, 26th Floor

Columbus, Ohio 43220        201 E. Fifth Street

Ph: 614-949-1181          Cincinnati, OH 45202

Fax: 614-386-9964         Telephone:  (513) 898-0050

Email: mcoffman@mcoffmanlegal.com  Facsimile:   (513) 898-0051

                Email: ryan.martin@jacksonlewis.com

/s/*Daniel I. Bryant*        Email: jamie.goetz-

Daniel I. Bryant (0090859)       anderson@jacksonlewis.com

**BRYANT LEGAL, LLC**

1550 Old Henderson Road       *Counsel for Defendant*

Suite W-126           *AK Tube*

Columbus, Ohio 43220

Direct: (614) 704-0546

Fax: (614) 573-9826

Email: dbryant@bryantlegalllc.com

*Counsel for Named Plaintiff*
*and Opt-In Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 5th day of March, 2021, a true and accurate copy of the foregoing was electronically filed with the United States District Court for the Northern District of Ohio via the Court's CM/ECF system, and that such system will send electronic notice of the filing to all counsel of record.

              /s/*Daniel I. Bryant*

              Daniel I. Bryant (0090859)

              *An Attorney for Named Plaintiff and those*
              *similarly situated*

36